**Not for Publication**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SALVATORE ALIANO,** *et al.*, | |
| **Plaintiffs,** | **Civil Action No.: 22-cv-5598 (ES) (AME)** |
| **v.** | **OPINION** |
| **TOWNSHIP OF MAPLEWOOD and JERRY GIAIMIS,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Plaintiffs Salvatore Aliano; Christopher Beischer, III; Diana Gil; Joseph Giorgio; William Isetts, IV; Bruno Marto; and Chian Weekes-Rivera (together, "Plaintiffs") initiated this action against Defendants the Township of Maplewood ("Maplewood"), and the Township Administrator for Maplewood, Jerry Giaimis ("Defendant Giaimis"), bringing claims for religious discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") and Title VII of the Civil Rights Act ("Title VII").  (D.E. No. 1 ("Complaint" or "Compl.")).  Before the Court is Defendants' motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (D.E. No. 3 ("Motion")).  The motion is fully briefed.  (D.E. No. 3-4 ("Mov. Br."); D.E. No. 5 ("Opp. Br."); D.E. No. 6 ("Reply")).  For the following reasons, Defendants' motion is **GRANTED-in-part** and **DENIED-in-part.**

## I.      BACKGROUND

### A.      Factual Background

Plaintiffs are fire fighters and police officers employed by Maplewood.  (Compl. ¶ 2). Around August 2021, Maplewood established a COVID-19 policy requiring all employees to be vaccinated or otherwise subject to regular testing.  (*Id.* ¶ 73; Opp. Br. at 2).  On October 19, 2021, the policy was amended to mandate vaccination.  (Compl. ¶ 74; D.E. No. 3-3 ("Giaimis Cert.") Ex. A at 5–6).[1]  The amended policy provided for exemptions and reasonable accommodations for employees whose religious beliefs precluded vaccination, so long as the accommodations did not present an "undue hardship" to Maplewood or threaten public health and safety.  (Compl. ¶ 75). The policy also included an exemption request form and explained that the information provided on the form would be used for an "interactive process" to determine an individual's eligibility for an exemption and to craft appropriate accommodations, if possible.  (*Id.*).

In late October and early November 2021, Plaintiffs each sought a religious exemption from Maplewood's mandatory vaccination policy, claiming that receiving the COVID-19 vaccine would violate their religious beliefs.  (*Id.* ¶¶ 76–83, 87–90, & 93–94; Giaimis Cert. Exs. B, D, F, H, J, L & N).  Shortly thereafter, Defendant Giaimis, acting on behalf of Maplewood,[2] issued letters denying Plaintiffs' exemption requests, citing the "undue hardship" to Maplewood and the threat to public health that would result should Plaintiffs be allowed to forego vaccination. (Compl. ¶¶ 76–83, 87–90, & 93–94; Giaimis Cert. Exs. C, E, G, I, K & M).  The letters denying Plaintiffs' requests provided that "we are prepared to offer you a leave of absence through

---

[1]      Page citations to Docket Entry number 3-3 refer to the pagination automatically generated by the Court's electronic filing system.

[2]      The Complaint appears to bring claims against Defendant Giaimis in his official capacity as the Township Administrator for Maplewood.  (Compl. ¶ 44).

December 31, 2021, at which point we can re-evaluate your request." (*See* Giaimis Cert. Exs. C, E, G, I, K & M). Nonetheless, Plaintiffs allege that Defendants provided accommodations for two employees who sought *medical* exemptions from the Maplewood policy. (Compl. ¶ 32).

According to the Complaint, as per the letters denying their requests, Plaintiffs were placed on unpaid leaves of absence pending their vaccination. (*See e.g.*, *id*. ¶ 238).[3] Plaintiffs Giorgio and Weekes-Rivera were told they could not return to work until they relinquished their civil rights claims. (*Id*. ¶¶ 20, 84 & 240). The Complaint alleges that on December 29, 2021, two days before his leave of absence was set to expire, Plaintiff Giorgio received a second letter from Defendants indicating that upon reconsideration, his exemption request would remain denied, as it still created an undue hardship for Maplewood. (*Id*. ¶ 85). He was given two days to get vaccinated or face termination. (*Id*.). According to the Complaint, rather than face termination, Plaintiffs all received the vaccination. (*Id*. ¶ 15).[4] Nonetheless, Plaintiff Weekes-Rivera "was singled out when she reported for duty" even after receiving the COVID-19 vaccine, and "was told to hand in her badge and service firearm and literally marched out of the police station." (*Id*. ¶16).

## B.   Procedural History

On June 20, 2022, the United States Equal Employment Opportunity Commission issued each Plaintiff a Notice of Right to Sue. (Compl. ¶¶ 59–64 & 66). On September 16, 2022,

---

[3]     The Complaint specifically alleges only that Plaintiffs Giorgio and Weekes-Rivera were placed on unpaid leave. (*Id*. ¶ 84).

[4]     In moving to dismiss, Defendants argue that Plaintiffs were never terminated. (Mov. Br. at 1). The Complaint is ambiguous on this issue—it both alleges that Plaintiffs received the vaccination so as not to be terminated (Compl. ¶ 15), that Plaintiffs were terminated (*id*. ¶ 218), and that, apart from Plaintiff Weekes-Rivera, Plaintiffs were allowed to return to work (*id*. ¶ 15). It is therefore unclear from the Complaint whether Plaintiffs were in fact terminated. And it is unclear from the Complaint whether Plaintiff Weekes-Rivera has come off unpaid leave (*id*. ¶ 95), though in Plaintiffs' opposition brief they indicate that "still to this day even after receiving the COVID-19 vaccination Plaintiff Weekes-Rivera remains on unpaid leave." (Opp. Br. at 14). However, the Court need not reach the issue because whether Plaintiffs were terminated or remain on unpaid leave is not at-issue in the present Motion.

Plaintiffs initiated this action, bringing counts against all Defendants for (i) religious discrimination in violation of NJLAD; (ii) failure to accommodate in violation of NJLAD; (iii) religious discrimination in violation of Title VII; (iv) failure to accommodate in violation of Title VII; (v) retaliation in violation of NJLAD and Title VII; and (vi) for a declaratory judgment that Defendants violated NJLAD and Title VII and an injunction ordering Defendants to comply therewith.  (Compl. ¶¶ 213–20, 231, 239, 252, 255 & 260).  Specifically, Plaintiffs contend Defendants subjected them to discriminatory treatment on the basis of their religious beliefs by accommodating employees seeking medical exemptions but refusing to make similar accommodations for Plaintiffs' religious exemption requests.  (*Id.* ¶¶ 21–26).  And Plaintiffs allege that Defendants wrongfully refused to engage in the "interactive process" stipulated in Maplewood's amended policy and allegedly required under Title VII and NJLAD, and "illegally coerced" Plaintiffs to betray their religious beliefs and receive the COVID-19 vaccination.  (*Id.* ¶ 9–11).

Defendants move to dismiss the Complaint, arguing that Plaintiffs have failed to sufficiently plead a "sincerely held religious belief," which Defendants argue is a necessary element for each of Plaintiffs' causes of action under Title VII and NJLAD.  (Mov. Br. at 3).  Plaintiffs oppose, asserting that they have stated cognizable religious objections to the COVID-19 vaccine to state a claim under both Title VII and NJLAD.  (Opp. Br. at 14–15).  Defendants replied.  (*See generally* Reply).  The Court is now prepared to rule.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

## III.  DISCUSSION

### A.  Plaintiffs' Exemption Requests

Before analyzing the sufficiency of Plaintiffs' allegations, the Court must first address Plaintiffs' argument, raised in opposition to Defendants' motion to dismiss, that the Court cannot consider Plaintiffs' letters requesting a religious exemption from Maplewood's vaccine mandate. (Opp. Br. at 5–6).  Plaintiffs appear to argue that the Court cannot consider the letters, which were attached to Defendants' motion to dismiss, because "none of the Plaintiffs attached their requests for religious exemption and accommodation to the Complaint."  (*Id*. at 6).  However, as Plaintiffs acknowledge (*id*. at 5–6), the Court can consider any "document integral to or explicitly relied upon in the [c]omplaint . . . without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted) (emphasis omitted).  Documents attached by a defendant to a motion to dismiss are considered

part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, as Defendants argue, "Plaintiffs' religious exemption/accommodation request letters set forth the basis for their entire case, and are also referred to in the Complaint." (Reply at 2). Indeed, Plaintiffs' claims under Title VII and NJLAD are premised on the denial of their requests for a religious exemption from Maplewood's vaccine mandate. (*See* Compl. ¶ 8). Plaintiffs are specifically challenging Defendants' failure to accommodate these requests and alleged retaliation against Plaintiffs for "their assertion of a religious exemption from the COVID-19 vaccination policy." (*Id*. ¶ 255). Further, it appears that some of the allegations of the Complaint were taken word-for-word from Plaintiffs' religious exemption requests. (*Compare* Compl. ¶ 52 *with* Giaimis Cert. at 37). The requests are therefore "integral to" *and* "explicitly relied upon in the complaint." *In re Burlington*, 114 F.3d at 1426 (emphasis omitted). It is of no moment that Plaintiffs failed to attach the letters to the Complaint. Accordingly, the Court will consider Plaintiffs' exemption requests in assessing whether Plaintiffs have sufficiently alleged claims under Title VII and NJLAD. *Cooper*, 374 F. App'x at 253 n.3.

**B.      Plaintiffs' Claims**

**1.      Title VII & NJLAD**

Plaintiffs assert claims under three provisions of Title VII—the antidiscrimination provision, failure to accommodate provision, and antiretaliation provision. (Compl. ¶¶ 233–41, 242–53 & 254–57). A claim pursuant to each provision is assessed under the familiar burden-

shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).  And for each claim, while a plaintiff need not make out a prima facie case, he must allege enough facts that "raise a reasonable expectation that discovery will reveal evidence of the necessary elements."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (cleaned up).

*First*, the antidiscrimination provision makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion*, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  To make out a prima facie case of religious discrimination under Title VII, the plaintiff must allege (i) that he is a member of a protected class, (ii) that he suffered an adverse employment action, and (iii) that nonmembers of the protected class were treated more favorably.  *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001).

*Second*, as to the failure to accommodate provision, § 2000e(j) defines "Religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  Section 2000e(j), read in conjunction with Title VII's antidiscrimination provision, makes it unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).  "To establish a prima facie case of religious discrimination [for failure to accommodate], the employee must [allege]: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing

to comply with the conflicting requirement." *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).

*Third*, the antiretaliation provision makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a). "To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

NJLAD has parallel provisions for discrimination, failure to accommodate, and antiretaliation. N.J. Stat. Ann. § 10:5-12(a), (q), (r). Claims brought pursuant to NJLAD are assessed in the same way as claims under Title VII. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas*.") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)); *McKinley v. Princeton Univ.*, No. 225069, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("[T]he prima facie case for retaliation is the same under Title VII and the NJLAD."). As such, the Court applies the same analysis to Plaintiffs' claims under NJLAD and Title VII. *See Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005).

### 2.     Religious Beliefs

In moving to dismiss, Defendants argue that Plaintiffs' claims for discrimination, failure to accommodate, and retaliation under Title VII and NJLAD all suffer the same fatal flaw: they fail "to plead a 'sincerely held religious belief,' i.e., a religious based objection to the vaccine, which is a requirement of the Title VII and NJLAD causes of action."  (Mov. Br. at 3).  Specifically, Defendants argue that Plaintiffs' "written religious exemption requests . . . do not rise to the level of a legally cognizable religious[-]based objection to the vaccine pursuant to applicable case law." (*Id.*).[5]  According to Defendants, Plaintiffs must "plead with specificity the factual basis behind the religious based objection, and not merely conclusory statements" in order to plead a cause of action. (*Id.* at 29).  Plaintiffs oppose, arguing first that Defendants are misstating the pleading standard on a motion to dismiss and improperly imposing a heightened pleading requirement on Plaintiffs, and second, that Plaintiffs have adequately alleged, as supported by their exemption requests, their religious-based objections to the COVID-19 vaccine.  (Opp. Br. at 6–7).

To begin, as an element of each of Plaintiffs' causes of action, Plaintiffs must allege that they had a sincerely held religious belief, and that their objection to receiving the COVID-19 vaccine was based on that belief.  *See McKinley*, 2023 WL 3168026, at *3 (collecting cases).  The Third Circuit has explained that "it is not sufficient merely to hold a 'sincere opposition to vaccination;' rather, the individual must show that the 'opposition to vaccination is a religious belief.'"  *Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)).

---

[5]      Defendants also provide arguments regarding the validity of Maplewood's vaccine policy.  (Mov. Br. at 4–7).  However, as Defendants acknowledge, "Plaintiffs do not challenge the legality of Maplewood's COVID-19 vaccine mandate imposed on public employees."  (*Id.* at 7).  Accordingly, the Court will not consider these arguments.

"Claims of religious discrimination present a unique and difficult challenge for judges." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-4024, 2021 WL 4399672, at *5 (E.D. Pa. Sept. 27, 2021). While "no court should inquire into the validity or plausibility of" a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder. *Fallon*, 877 F.3d at 490; *Blackwell v. Lehigh Valley Health Network*, No. 5:22-03360, 2023 WL 362392, at * 5 (E.D. Pa. Jan. 23, 2023). "Mindful of this difficult and uneasy task, the Court is guided by relevant case law in this [C]ircuit." *Blackwell*, 2023 WL 362392, at *5.

In assessing the sufficiency of a plaintiff's pleading, courts engage a two-part inquiry into whether the plaintiff's stated belief is (i) sincerely held and (ii) religious within the plaintiff's "own scheme of things." *Welsh v. U.S.*, 398 U.S. 333, 339 (1972). As to the first prong, "[w]hether a belief is sincerely held is a question of fact." *Geerlings*, 2021 WL 4399672, at *6 (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). As to the second prong, the Third Circuit has adopted three factors—the *Africa* factors—to consider when determining whether a belief is "religious" in nature. *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). These include whether the belief (i) "addresses fundamental and ultimate questions having to do with deep and imponderable matters"; (ii) "is comprehensive in nature"; and (iii) is accompanied by "certain formal and external signs." *Id.*

Here, Plaintiffs each claim to belong to a formal organized religion—either Christianity or Roman Catholicism. (*See* Giaimis Cert. Exs. B, D, F, H, J, L & N). However, the Court must still assess whether their stated objections to the COVID-19 vaccine are religious in nature in light of the *Africa* factors and the decisions of other courts in this Circuit. *Fallon*, 877 F. 3d at 490; *Blackwell*, 2023 WL 362392, at * 5–6.

10

The central inquiry for the Court is whether Plaintiffs' beliefs are religious in their subjective view of the world. *Ambrose v. Gabay Ent. & Assoc., P.C.*, No. 12-5453, 2013 WL 4195387, at *3 (E.D. Pa. Aug. 15, 2013). A plaintiff may plausibly allege a religious belief even if she does not belong to an organized religion. *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pa*, 200 F. Supp. 3d 553, 562 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487 (3d Cir. 2017). And a belief may be religious in an individual's "own scheme of things" regardless of how widely accepted it is in a particular organized religion. *See Ambrose*, 2013 WL 4195387, at *3 (rejecting the defendants' argument that the plaintiff's stated belief was not deeply held in Roman Catholicism). Indeed, "it is not for this Court to make 'a scriptural determination' to the legitimacy or quality of a plaintiff's religious beliefs." *Blackwell*, 2023 WL 362392, at * 6 (citations omitted); *Ambrose*, 2013 WL 4195387, at *3 (explaining that "courts lack the competence to be 'arbiters of scriptural interpretation'") (quoting *Thomas v. Review Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)).

Nevertheless, a court can, and must, ensure that a plaintiff's beliefs are religious, as opposed to being "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490. Beliefs that are effectively medical in nature or amount to an "isolated moral teaching" are insufficient to state a religious belief for purposes of Title VII and NJLAD. *Id.* (quoting *Africa*, 662 F.2d at 1032). For example, in *Fallon*, the Third Circuit found that the plaintiff's medical concerns with the efficiency and safety of the flu vaccine did not constitute a religious belief entitled to protection. *Id.* It similarly rejected the plaintiff's belief in the moral commandment "[d]o not harm your own body" as an isolated moral teaching untethered from "a comprehensive system of beliefs about fundamental or ultimate matters." *Id.* It follows that to adequately plead a "religious belief," a plaintiff must allege some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system. *See Addison v. Amazon.com, Inc.*, No.

22-01071, 2022 WL 2816946, at *5 (finding that, though the plaintiff alleged that she was "highly spiritual," because she "fail[ed] to provide any additional information about the nature of her beliefs . . . she [could not] establish that she held sincere religious beliefs"); *Winans v. Cox Automotive, Inc.*, No. 22-3826, 2023 WL 2975872, at *4 (D.N.J. April 17, 2023) (finding that the plaintiff failed to "link his 'sincere concerns' with the use of fetal cell lines to any 'formal and external signs' of religion") (quoting *Fallon*, 877 F.3d at 491); *Blackwell*, 2023 WL 362392, at *7–8 (finding that, though the "[p]laintiff's request form states she has religious and philosophical objections to COVID-19 vaccination, cites a [B]ible passage, states that [p]laintiff is a member of the United Church of Christ and that [p]laintiff believes taking the COVID-19 vaccine would defile [p]laintiff's relationship with God," nonetheless, her beliefs were medical or isolated moral teachings and "absent further pleading regarding the religious nature of the belief" she had failed to allege that her beliefs were religious).   Conclusory allegations that a belief is religious are therefore insufficient; rather, a plaintiff must allege *how* her objection is based upon a *religious* belief.   In other words, she must demonstrate that her objection arises from a subjective belief that is tied to her belief system which meets the *Africa* factors.   *Africa*, 662 F.2d at 1032; *see Fallon*, 877 F. 3d at 492–93 (concluding that the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected").

With these principles in mind, the Court will now turn to each Plaintiff's religious exemption request to determine whether the request adequately stated religious objections to Maplewood's COVID-19 policy.

### 3.     Plaintiffs' Objections

Defendants argue broadly that Plaintiffs have not "established any 'link' between a belief in God or Christianity and any type of religious edict or mandate not to become vaccinated." (Reply at 8; *see generally* Mov. Br.).  Defendants liken the nature and language of each Plaintiff's objections to the COVID-19 vaccine to other cases in this Circuit, including *Fallon*, *Finkbeiner*, *Geerlings*, *Caviezel*, and *Aukamp-Corcoran* (the "*Fallon* line of cases") and argue that Plaintiffs' claims should likewise be dismissed.  (Mov. Br. at 15–38).  Plaintiffs oppose, arguing "[t]here is no case law to support the standard that Defendants are holding . . . Plaintiffs to, especially regarding their requirement for specificity."  (Opp. Br. at 7).  They counter that they have sufficiently alleged that they were discriminated against on the basis of their religion to meet the notice pleading requirements.  (*Id*.).

### i.     Sufficient Claims

As explained below, the Court finds that Plaintiffs Aliano, Giorgio, Isetts, Marto, and Weekes-Rivera have sufficiently stated a religious belief in their exemption requests to survive Defendants' Motion.

***Aliano.***  As to Aliano specifically, Defendants argue that his exemption request is based on "moral objections, medical objections, or other similar objections that do not rise to the level of being 'religious' in nature."  (Mov. Br. at 30).  Plaintiffs counter that "Defendants . . . grossly mischaracterize Mr. Aliano's requests as moral objections, medical objections, or other similar objections."  (*Id*. at 7).  The Court agrees with Plaintiffs that Aliano's exemption request adequately states a religious objection to Maplewood's COVID-19 policy based on his belief that his genetic code is the "fingerprint of God."  As discussed below, however, Aliano's exemption

request fails to adequately state a religious objection based on his anti-abortion beliefs.  *See infra* at 23.

Aliano's request identifies him as a "devout Christian" and provides his subjective religious belief that his "genetic code represents the 'fingerprint of God.'"  (Giaimis Cert., Ex. B at 8).  His request goes on to specifically tie his objection to the COVID-19 vaccine to this subjective religious belief.  The request states, "I believe that these drug therapies are altering my genetic code thus changing the 'fingerprint of God'" and that receiving an mRNA vaccine "is against every single belief that I hold true with regards to my creation, my existence, and the miracle of life."  (*Id*.).  In this way, Aliano's exemption request connects his objection to the Pfizer and Moderna COVID-19 vaccines to his beliefs regarding "fundamental and ultimate questions having to do with deep and imponderable matters" such as his creation and his very existence.  *Africa*, 662 F.2d at 1032.  As such, Aliano's stated objection appears to stem from his religious, not medical or moral, beliefs.  (*See* Opp. Br. at 8).[6]

Given that "Mr. Aliano's reference to people's genetic code is not made in a scientific sense" but "a biblical sense," his objection is distinguishable from those raised in the *Fallon* line of cases.  (*See* Opp. Br. at 8).  The plaintiffs in those cases primarily raised medical concerns.  For example, in *Fallon* the plaintiff objected to receiving the flu vaccine on the basis of his belief that "one should not harm their own body" and that "the flu vaccine may do more harm than good." 877 F.3d at 492.  Similarly, in *Finkbeiner*, the plaintiff objected to COVID-19 testing on the basis of her beliefs that "there are chemicals/carcinogens associated with swab and testing material,"

---

[6]     Aliano's exemption request does additionally provide some of his medical beliefs, including his commentary on other vaccines whose "records are well-documented, and their effectiveness has been time-tested" as well as his commentary on his "natural immunity" to COVID-19 after contracting it.  (Giaimis Cert., Ex. B at 8).  Nonetheless, the Court finds that the core of Aliano's stated objection to the COVID-19 vaccine regards the manner in which mRNA technology allegedly alters him from the "fingerprint of God," which is a religious objection.

that "testing is toxic," and that "testing in this manner is a bad choice for [her] health and body."
*Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 466 (M.D. Pa. Aug. 2022) (alterations in original).   The courts in *Caviezel* and *Geerlings* were considering motions for preliminary injunction following full evidentiary hearings, and their decisions are distinguishable on that basis alone.   Even so, in *Caviezel* the plaintiff testified that her objection to vaccination for her daughter stemmed from her belief that vaccinations may not be safe and may cause autism.   *Caviezel v. Great Neck Pub. Schs.*, 701 F. Supp.2d 414, 429 (E.D.N.Y. 2010).   And in *Geerlings*, two of the plaintiffs testified that their objections to masking for their children were based on their concerns that masking is harmful, as opposed to their religious beliefs.   2021 WL 4399672, at *7–9.   As to the other two plaintiffs, the district court found that they had not demonstrated that their concerns with covering their faces were connected to their comprehensive religious beliefs.   *Id.*[7]   In contrast, here, Aliano's apprehension towards the COVID-19 vaccine arises from his concern that the vaccine will prevent him from being the "fingerprint of God"—rather than concerns regarding the potential side effects or dangers of the vaccine.   (*See* Giaimis Cert., Ex. B).   It is Aliano's specific and subjective belief in the "fingerprint of God" as a Christian and his fear that vaccination will alter his genetic code that distinguish him from the plaintiffs in the above cited cases, and that sufficiently state a religious belief to survive a motion to dismiss.

---

[7]   Defendants additionally rely on *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 WL 507479, at *4 (E.D. Pa. Feb. 18, 2022) and *Prewitt v. Walgreens Co.*, No. 11-2393, 2012 U.S. Dist. LEXIS 137027, at *9–16 (E.D. Pa. Sept. 25, 2012), which are likewise distinguishable.   (*See* Mov. Br. at 27 & 33).   In *Aukamp-Corcoran* the court was deciding a motion for summary judgment and considered testimony by the plaintiff that her religious objection to vaccination arose in response to her medical objection and "after she had researched vaccines 'from a medical perspective.'"   *Aukamp-Corcoran*, 2022 WL 507479, at *4.   And in *Prewitt* the court denied-in-part the plaintiff's motion to amend his complaint to add in a religious discrimination claim because it did not arise out of the same set of facts as the plaintiff's age discrimination claim, for which he received a Right to Sue letter.   *Prewitt*, 2012 U.S. Dist. LEXIS 137027, at *23.   The court nonetheless commented that the plaintiff had failed to plead a religious belief because his stated basis for opposing the flu vaccine was that "he had a very close friend who died from Guillain-Barre Syndrome . . . from a flu vaccine."   *Id.* at *30 n.15.

**Giorgio.**  Defendants argue that Giorgio's objection to COVID-19 vaccination "is based solely on the fact that the COVID vaccines are allegedly produced with fetal tissue" and he "does not identify any religious tenet, teaching, etc." to support his objection.  (Mov. Br. at 37).  In response, Plaintiffs argue that Mr. Giorgio "has sincerely held religious beliefs regarding the use of fetal cells in the COVID-19 vaccination."  (Opp. Br. at 10).

Though it is close, the Court agrees with Plaintiffs that Giorgio adequately connected his anti-abortion beliefs to his religion and objection to Maplewood's COVID-19 vaccine mandate. (*See id*. at 10).  In his religious exemption request, Giorgio identifies himself as a Christian and explains the "authority [he] adhere[s] to is The Holy Bible and that authority is derived from God." (Giaimis Cert., Ex. H at 26).  His request further asserts, "as a Christian, I cannot according to my beliefs and conscience, use these products that have origins in abortion."  (*Id.*).  Finally, Giorgio identifies a Bible passage that provides the foundation for his belief that "the inmost being is sacrosanct," which in turn provides the religious basis for his objection to abortion.  (*Id.*).[8]  Based on these statements, Giorgio's exemption request provides enough facts regarding his subjective personal beliefs, how those beliefs arise from his religious belief-system, and how those beliefs form the basis of his objection to the COVID-19 vaccinations to survive a motion to dismiss.

**Isetts.**  Defendants argue that, like in the *Fallon* line of cases, Isetts's belief—that "his body is his temple" and the vaccine would "desecrat[e] that temple"—is a moral and/or medical belief. (Mov. Br. at 37–38).  Plaintiffs argue that Isetts sufficiently connected his objection to the COVID-19 vaccine to his religious beliefs by quoting "passages directly from the Bible" and

---

[8]       With respect to the Bible passage Giorgio references, the Court cannot evaluate an individual's subjective interpretation of scriptural works.  *Ambrose*, 2013 WL 4195387, at *3.

"explaining why receiving the COVID-19 vaccination would violate his religious beliefs."  (Opp. Br. at 11).

The Court agrees with Plaintiffs that Isetts's citations to and interpretations of the Bible adequately connect his objection to Maplewood's COVID-19 vaccination policy to his subjective religious beliefs.  (*See id.*).  In his exemption request, Isetts identifies as a "strict practicing Irish Catholic."  (Giaimis Cert., Ex. J at 37).  He proceeds to cite Bible passages and provide insight into his interpretation of those passages and his subjective beliefs that form the basis of his objections.  (*Id.*).  For example, Isetts cites Corinthians 3:17, "[i]f anyone destroys God's temple, God will destroy him.  For God's temple is holy, and you are that temple."  (*Id.*).  Isetts explains that this passage has influenced his perspective regarding vaccinations in general, including his belief that "[b]y willingly putting any manmade inoculation into my body, I am desecrating my temple."  (*Id.*).  In so doing, Issets's exemption request provides the Court with adequate insight into his subjective beliefs, how those beliefs arise from his religious belief-system, and how those beliefs form the basis of his objection to the COVID-19 vaccinations to survive a motion to dismiss.

The Court also agrees with Plaintiffs that Isetts's exemption request is distinguishable from *Finkbeiner* and the rest of the *Fallon* line of cases.  (*See* Opp. Br. at 11).  Similar to Aliano, it is evident that Isetts's concerns with respect to the "pollution" of his bloodstream arise out of his subjective religious beliefs that his body is a "temple" and "to be a true Catholic, you can only follow Jesus with untainted blood" (Giaimis Cert., Ex. J at 38), rather than "scientific, personal, and medical objections to the vaccine" *Winans*, 2023 WL 2975872, at *4.  (*See* Opp. Br at 11).  Unlike the plaintiffs in the *Fallon* line of cases, Isetts's concerns do not relate to the efficacy, potential side effects, or risk of harm to his body from receiving the COVID-19 vaccine.  *See supra*

at 14–15; *see also, e.g.*, *Finkbeiner*, 623 F. Supp. 3d at 466; *Geerlings*, 2021 WL 4399672, at *7 ("Even if I were to accept that Ms. Geerlings sincerely believes the body is a temple *and should not be harmed*, it would be a step too far to count everything she believes about healthy living as a religious practice.") (emphasis added).  This makes his request distinguishable from the *Fallon* line of cases.[9]

**Marto.**  Defendants argue that Marto "does not identify any religious teaching, tenet, etc." or "provide a link between his objection to the use of fetal tissue in the vaccines and his claim of a sincerely held religious belief."  (Mov. Br. at 38).  In opposition, Plaintiffs argue that "Mr. Marto provided a clear link between his objection to the use of fetal tissues in the vaccines and his religious beliefs."  (Opp. Br. at 12).

The Court agrees with Plaintiffs that Marto sufficiently connected his anti-abortion beliefs to his subjective religious beliefs and his objection to Maplewood's mandatory vaccination policy. (*See id*.).  Here, Marto describes his "life[]long Christian faith" and conveys his primary objection to COVID-19 vaccination stems from the use of fetal cell lines in vaccine development.  (Giaimis Cert., Ex. L at 45–46).  Marto cites Exodus 20:13, "[y]ou shall not murder" and Proverbs 6:16-17, "[t]here are six things the LORD hates, seven that are detestable to him . . . hands that shed innocent blood."  (*Id.* (emphasis in original)).  He also provides his subjective interpretation of those Bible passages as forbidding abortion, which he believes is murder.  (*Id.*).  And he provides information regarding the use of fetal cell lines derived from aborted fetuses in the COVID-19 vaccines.  Marto concludes, "[a]ccordingly, I cannot receive these vaccines without violating my beliefs."  (*Id.*). Marto thus provides his subjective religious belief, how that belief arises from his Christian belief-

---

[9]        The Court acknowledges that some of the statements in Isetts's exemption request sound in harm to the body, including that any inoculation "causes pollution and poisoning of your bloodstream."  (Giaimis Cert., Ex. J at 38). Nonetheless, at this stage in the litigation, the Court is satisfied that Isetts has established a religious belief that vaccination will make him "not pure in the eyes of the Lord."  (*Id.*).

system, and how receiving the COVID-19 vaccine would violate that belief.  This is enough to state a sincerely held religious belief at this stage in the litigation.

*Weekes-Rivera.*  Defendants argue that Weekes-Rivera "does not identify any link between her belief in God and vaccinations" and that her objections to the COVID-19 vaccine, similar to those raised in *Fallon* and *Finkbeiner*, "seem to be more of a 'moral' objection rather than a religious one."  (Mov. Br. at 38–39).  Plaintiffs counter that Weekes-Rivera "laid out her religious beliefs in her request for religious exemption and accommodation" and that her objections to the COVID-19 vaccine are distinguishable from the objections raised in *Fallon* and *Finkbeiner*.  (Opp. Br. at 12).

The Court agrees with Plaintiffs that Weekes-Rivera's exemption request adequately makes a religious objection to Maplewood's COVID-19 policy.  (*See id.*).  Weekes-Rivera's exemption request rests on her belief that her immune system is a gift from God.  (Giaimis Cert., Ex. N at 54).  Weekes-Rivera identifies specific biblical passages that support her beliefs and ties her religious beliefs directly to her objection to receiving the COVID-19 vaccination.  For example, her exemption request cites to Exodus 20:3-4 and provides that "I believe that God is the ultimate healer and that no vaccination is necessary or could take His place in healing."  (*Id.*).  In so doing, Weekes-Rivera's exemption request provides details about her personal, subjective beliefs, about how those beliefs arise from her Christian belief-system, and about how receiving the COVID-19 vaccine would violate those beliefs.

Weekes-Rivera's exemption request is also distinguishable from the requests in the *Fallon* line of cases.  (*See* Opp. Br. at 12).  As explained above, in those cases, the plaintiffs provided objections based upon the perceived efficacy and safety of a medical practice.  *See supra* at 14–15.  Here, Weekes-Rivera does not contest the efficacy or safety of the COVID-19 vaccine.  Rather,

as Plaintiffs argue, her request for exemption from the COVID-19 vaccine is based on "her religious beliefs [that] she must rely on her immune system as is." (Opp. Br. at 12; *see* Giaimis Cert., Ex. N at 54 ("We are bestowed with His gift, the immune system. . . . Taking this vaccine also shows a lack of faith in God and puts idols before Him.")). Thus, Weekes-Rivera's request is distinguishable from the *Fallon* line of cases.

In sum, the exemption requests of Plaintiffs Giorgio, Isetts, Marto, and Weekes-Rivera all provide information regarding their subjective religious beliefs, explain how those beliefs arise from their Christian belief systems, and connect those beliefs to their objections to the COVID-19 vaccine. As to Plaintiff Aliano, the Court finds that his exemption request adequately explains his subjective belief that his genetic code is the "fingerprint of God," how that belief arises from his Christian belief-system, and how it connects to his objection to the COVID-19 vaccine. Accordingly, the exemption requests of Plaintiffs Aliano, Giorgio, Isetts, Marto, and Weekes-Rivera adequately state a religious objection to Maplewoood's COVID-19 policy to survive Defendants' Motion. The Motion is DENIED as to Plaintiffs Giorgio, Isetts, Marto, and Weekes-Rivera and DENIED-in-part as to Plaintiff Aliano.

### ii.        Insufficient Claims

*Beischer*. Defendants argue that Beischer "does not articulate or allege how, why, or in what manner the use of fetal cells violates his religious beliefs" and that he fails to "identify any link between his belief in God and any religious based mandate that anyone who believes in God should never get a vaccine." (Mov. Br. at 35). In opposition, Plaintiffs argue that "[u]nder the law, Mr. Beischer is not required to pinpoint a specific religious 'mandate' in order to establish his sincere religious beliefs" and that "[t]here is absolutely no requirement that all members of the same religion must have the same beliefs." (Opp. Br. at 9). Plaintiffs further argue that Beischer's

request for religious exemption states that he "is a Roman Catholic and so use of aborted fetal cells is in direct violation with his religious beliefs." (*Id*. at 10).

The Court agrees with Defendants that Beischer's exemption request fails to adequately make a religious objection to Maplewood's COVID-19 policy. A plaintiff need not establish that his belief is widely accepted within an organized religion or connected to a specific edict of that religion. *Ambrose*, 2013 WL 4195387, at *4–5. However, as explained above, a plaintiff must allege facts explaining how his subjective belief is religious in nature and connect his objection to that belief. *See supra* at 10–12. Conclusory allegations that a belief is religious are insufficient.

Here, Beischer's exemption request states only that he is "a baptized Roman Catholic, and due to my Catholic beliefs, I am requesting exemption from the COVID-19 vaccine" and that "using aborted fetal cells and/or aborted fetal cell lines, are in direct conflict with my religious beliefs." (Giaimis Cert., Ex. D at 14). These conclusory statements fail to provide a sufficient connection between Beischer's objection to the COVID-19 vaccines—that they were "developed and/or produced using aborted fetal cells" (*id*.)—and his subjective religious beliefs. Beischer did not provide any additional information regarding the nature of his beliefs as a Roman Catholic, including how receiving the COVID-19 vaccine would violate those beliefs. The Court must assess whether Beischer's belief is religious in his "own scheme of things," regardless of what is widely accepted in his stated religion—Roman Catholicism. *See Ambrose*, 2013 WL 4195387, at *3–5 ("Nor does it matter if . . . most adherents to the Roman Catholic faith do not share Plaintiff's objection . . . As the Supreme Court has stated, a person's belief can be religious even if it is not 'shared by all of the members of [her] religious sect.'") (quoting *Thomas*, 450 U.S. at 715–16). In other words, it is Beischer's subjective religious belief that is protected, so Beischer must provide information concerning the religious nature of his own belief and how his objection to the COVID-

19 vaccine is connected to that belief.  *See Blackwell*, 2023 WL 362392, at *8 (dismissing the plaintiff's claims because the plaintiff had "fail[ed] to plead any additional information about the religious nature of her beliefs" beyond identifying an organized religion she belonged to and claiming her objection arose from that organized religion); *see also Winans*, 2023 WL 2975872, at *4.  Beischer failed to do so here.

*Gil.*  Defendants argue that Gil's "objection to the vaccine appears to be exclusively based upon the fact that the vaccine uses the cells of aborted fetuses" which is "pleaded as a moral objection." (Mov. Br. at 36).  Because "she does not articulate or otherwise plead the link between her religious beliefs and her objection to the vaccine," Defendants argue that she has failed to plead a religious belief.  (*Id*.).  Plaintiffs counter that Gil "is a Roman Catholic woman who has sincere beliefs that abortion is wrong and that because of her religion she is 'Pro Life.'"  (Opp. Br. at 10).  According to Plaintiffs, Gil's objection to the use of fetal cells in the COVID-19 vaccines is a religious, not moral objection.  (*Id*.).

The Court agrees with Defendants that Gil's exemption request fails to adequately make a religious objection to Maplewood's COVID-19 policy.  Gil's request identifies her as a "Roman Catholic, and a Pro-life individual" who "follow[s] the practices of the aforementioned religion." (Giaimis Cert., Ex. F at 19).  Contrary to Plaintiffs' argument, Gil's request does not indicate that her "Pro-life" position is a result of her religious beliefs—Gil's request merely identifies her religious affiliation as a Roman Catholic and her political position as a "Pro-life individual."  (*Id*.; *see* Opp. Br. at 10).  Apart from identifying as a Roman Catholic in the beginning of her request, Gil does not provide any additional information regarding the nature of her religious beliefs.  As with Beischer, Gil merely identifies with an organized religion, without providing any additional

information regarding her own beliefs, which is insufficient.  *See Blackwell*, 2023 WL 362392, at *8.

Additionally, Gil's objection to the COVID-19 vaccines appears to be based on her political position as a "Pro-life individual" and her "moral and ethical" beliefs, rather than her religious beliefs.  (*See* Giaimis Cert., Ex. F at 19–20).  Her exemption request provides that the use of fetal cell lines derived from an aborted fetus "causes [her] to have anxiety, sleepless nights, nausea, and it goes against every *moral and ethical law* [she] follow[s]."  (*Id.* (emphasis added)).  While the Court does not doubt the sincerity of Gil's objection to abortion, nowhere in her request does Gil indicate how that objection is related to her religious beliefs.  Beliefs which are "essentially political, sociological, or philosophical" or are "isolated moral teachings" are not religious and are not entitled to protection under Title VII.  *Fallon*, 877 F. 3d at 490–92.

**Aliano**.  Insofar as Aliano objects to the Johnson and Johnson vaccine because it was developed using a fetal cell line "which was originally derived from a fetus electively aborted in 1985" (Giaimis Cert., Ex. B. at 9), the Court finds that Aliano has not sufficiently connected this objection to his subjective religious beliefs.  Unlike his belief that he is the "fingerprint of God," Aliano does not provide any information on how his opposition to abortion arises from his subjective beliefs regarding his Christian belief-system.  Aliano merely provides the conclusory statements that "[t]he Johnson and Johnson vaccine does not utilize the mRNA technology, but it also presents a challenge to my religious belief" and that "[a]s a Devout Christian, I cannot use this vaccine given its known origins which is linked to such a sacrilegious event."  (*Id.*).  Aliano does not explain how abortion is sacrilegious in his belief-system or in his "own scheme of things." *Welsh*, 398 U.S. at 339.  As with Plaintiffs Beischer and Gil, without more, this is insufficient to state a religious belief.  *See Winans*, 2023 WL 2975872, at *4 (finding that the plaintiff failed to

sufficiently connect his anti-abortion beliefs to his religion as the request "merely assert[ed] that fetal cell lines were, in fact, used" and the plaintiff failed to "identify why [he] object[ed] to the use").

In sum, the exemption requests of Plaintiffs Beischer and Gil do not sufficiently explain their subjective religious beliefs, how those beliefs arise from their belief-systems, or how those beliefs relate to their objection to the COVID-19 vaccine.   Accordingly, their claims are DISMISSED.  As to Plaintiff Aliano, his exemption request does not sufficiently connect his anti-abortion beliefs to his subjective religious beliefs or his belief-system.  To the extent his claims are premised on his anti-abortion beliefs, those claims are DISMISSED.  Given that Plaintiffs' claims are premised on their requests for exemption from Maplewood's COVID-19 policy and given that the Court has found that their requests did not adequately state a religious objection to Maplewood's policy, amendment to the Complaint would be futile.  *See Fallon*, 877 F. 3d at 494 (finding that the district court did not abuse its discretion in dismissing the plaintiff's claims with prejudice because he "had not proposed any amendments that would cure the fundamental deficiency in his claims—that his anti-vaccination beliefs are not religious in nature" and "it does not appear that he could do so").  As Defendants argue, Plaintiffs "can't retroactively expand the factual basis behind their claim of a sincerely held religious belief, because Defendants' denial of their request was based on the language of their exemption/accommodation request letters." (Reply at 9).  Accordingly, the dismissal is *with prejudice*.

## IV.    CONCLUSION

In sum, Plaintiffs Beischer and Gil failed to adequately connect their objections to the COVID-19 vaccine to their subjective religious beliefs in their requests for exemption.  Similarly, Plaintiff Aliano failed to adequately connect his anti-abortion beliefs to his subjective religious

beliefs.   Accordingly, the Court **GRANTS** Defendants' Motion as to the claims of Plaintiff Aliano—to the extent they are premised on his anti-abortion beliefs—Beischer, and Gil; said claims are **DISMISSED** *with prejudice*.   Defendants' Motion is otherwise **DENIED**.   An appropriate Order accompanies this Opinion.


**Dated:** July 7, 2023


**Hon. Esther Salas, U.S.D.J.**